1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE JAMES KEENAN, d.b.a. DATA
PROPERTY SERVICES,

       Debtor.

_____

JAMES W. KEENAN,

          Appellant,

v.

ROSS M. PYLE,

          Appellee.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil No. 10cv455-L(AJB)

Bankruptcy No. 96-00871-B11

**ORDER DISMISSING APPEAL**

     This is an appeal from an order of the United States Bankruptcy Court for the Southern District of California.  James Keenan ("Debtor") filed a voluntary Chapter 11 bankruptcy case in 1996.  Appellee Ross M. Pyle was appointed Chapter 11 Trustee.  A joint plan of reorganization was confirmed in 1998 and Mr. Pyle was appointed as the Liquidating Trustee ("Trustee").  The Debtor objected to the Trustee's request for approval of a Rescission and Compromise Agreement ("Agreement") between the Estate and Thomas Curtin, the Debtor's purported partner.  After briefing and a hearing, the Bankruptcy Court overruled the Debtor's objection and approved the Agreement.  The Debtor appealed.

/ / / / /

/ / / / /

1    The Debtor's brief does not state the statutory basis for this court's appellate jurisdiction,

2 as required by Federal Rule of Bankruptcy Procedure 8010(a)(1)(B).[1]  The Trustee, while

3 declining to speculate on what basis the Debtor may have intended to assert appellate

4 jurisdiction, argues that the appeal should be dismissed.

5    As the Appellant, the Debtor bears the burden to establish jurisdiction.  *South Dakota v.*

6 *Neville*, 459 U.S. 553, 569 n.4.  The Debtor has not carried this burden.

7    This court has jurisdiction over final orders of the bankruptcy court.  28 U.S.C.

8 § 158(a)(1); *see also in re Lievsay (Lievsay v. W. Fin. Sav. Bank)*, 118 F.3d 661, 662 (9th Cir.

9 1997).  The court also has appellate jurisdiction over interlocutory orders, provided the appellant

10 has obtained leave of court.  28 U.S.C. § 158(a).  From the record it does not appear that the

11 Debtor sought leave of the Bankruptcy Court before filing the notice of appeal.  He has not

12 sought leave from this court.  Accordingly, the court must look to the nature of the underlying

13 order to determine whether it was final or interlocutory.  *Lievsay*, 118 F.3d at 662.

14    "An order is final if it constitutes a complete adjudication of the issues at bar and clearly

15 evidences the judge's intention that it be final."  *In re Wiersma (Wiersma v. Bank of the West)*,

16 483 F.3d 933, 938 (9th Cir. 2007).  "Furthermore, a bankruptcy order is appealable where it 1)

17 resolves and seriously affects substantive rights and 2) finally determines the discrete issue to

18 which it is addressed."  *Id*. at 939 (internal quotation marks and citation omitted); *see also In re*

19 *Frontier Properties, Inc. (Elliott v. Four Seasons Properties)*, 979 F.2d 1358, 1363 (9th Cir.

20 1992).

21    Although the Agreement approved by the Bankruptcy Court was referred to as a

22 compromise, it by no means adjudicated the issues between the Estate and Mr. Curtin, and the

23 order approving it was not a final order.  The Debtor agrees with this conclusion.  (*See*

24 Appellant's Opening Brief at 3.)  The events leading up to the Agreement provide relevant

25 context for determining whether the order was final or interlocutory.

26 /////

27

28    [1]    The Debtor did not attempt correct this in his reply brief, as he elected not to file one.

10cv455

Unless noted otherwise, the facts below are taken from the Declaration of Ross M. Pyle in Support of Liquidating Trustee's Reply to Objection of Debtor James W. Keenan to Notice of Intended Action Re: Approval of Rescission and Compromise Agreement with Thomas Curtin [Loma Alta Indus. Park] (Record on Appeal ("ROA"), Exh. 3.)  They were undisputed below and remain undisputed on appeal.

The Debtor and his wife hold an 85% share[2] in real property known as the Loma Alta Industrial Park ("Property").  Mr. Curtin owns a 9% share, and the remainder is owned by a third party.  The Property is allegedly owned by a partnership comprised of the Debtor, his wife, Mr. Curtin and the third party ("Partnership").  The rights of the parties relative to the Partnership are the subject of an adversary proceeding, which is not a part of this appeal.[3]  In the adversary proceeding, the Trustee contends he is entitled to quiet title, surrender of the Property, avoidance of interests in the Property and recovery of avoided transfers and/or unrecorded ownership interests in the Property.  Among other issues, the extent of Mr. Curtin's share in the Partnership and the Property is disputed.  While his 9% share is undisputed, he claims he has an additional 28% share for a total of 37%.

Pursuant to a June 13, 1997 Bankruptcy Court order, the Trustee is the successor to the Debtor's right, title and interest in the Partnership, including his right to participate in Partnership management, and ownership of the Partnership property.  Specifically, the Trustee is entitled to possession of the Property with powers to manage it and collect rents, issues and profits therefrom.

Under a September 10, 1997 Bankruptcy Court order ("Initial Distribution Order"), the Trustee was authorized to make a distribution of excess funds from the Partnership of 55% to the Estate and 9% to Mr. Curtin, with authority to make such distributions on an ongoing basis according to the same percentages.  Under the Initial Distribution Order, Mr. Curtin did not receive a distribution for the disputed portion of his share.  Those funds were deposited in a

---

[2]     For ease of reference, all ownership percentages are rounded.

[3]     Adversary Proceeding No. 96-90831-B11

10cv455

blocked account.  He contended that he was entitled to earn 7% interest per year on the disputed portion of his share, rather than a lesser rate the funds earned in the blocked account.

Because over time a large amount of funds had accumulated on account of Mr. Curtin's disputed share, and because the interest on such funds could be substantial (*see* ROA Ex. 9, Reporter's Transcript of Proceedings ("Transcript") at 4), the Trustee entered into an agreement with Mr. Curtin, whereby a substantial portion of the accumulated funds could be distributed to Mr. Curtin with a complete reservation of rights as between Mr. Curtin and the Trustee ("Interim Distribution Agreement").  Under the Interim Distribution Agreement, Mr. Curtin received a distribution of excess funds as of July 31, 2001 based on a 37% share with interest at the rate they earned in the blocked account.  Beginning with July 31, 2001, Mr. Curtin would be entitled to regular distributions based on a 37% share until the extent of his ownership share is resolved. All unresolved claims and issues between the Trustee and Mr. Curtin were reserved.  The Interim Distribution Agreement was approved by the Bankruptcy Court by order dated January 14, 2003.

Pursuant to the Initial Distribution Order and the Interim Distribution Agreement, Mr. Curtin received $2,365,384.28.  The Trustee held back $229,405.31, representing an interim distribution accrued as of October 31, 2008, to which Mr. Curtin would have otherwise been entitled but for the Trustee's desire to set off his expenses.

Since the inception of the case through October 31, 2008, the Trustee incurred $718,975.31 in fees and costs in connection with the protection and preservation of the Property ("Loma Alta Attorney Expenses").  The reconciliation of Trustee's expenses which resulted in this amount was in and of itself an cumbersome process involving review of voluminous records. (Transcript at 6.)  According to the Trustee, Mr. Curtin's pro rata share of these expenses, based on a 37% share, is $268,378.98.  The Trustee contended that this sum should have been set off against the distributions to Mr. Curtin pursuant to the Interim Distribution Agreement, however, it had not been.

On October 20, 2008 the Bankruptcy Court authorized the sale of a part of the Property free and clear of liens and interests, with the liens and interests attaching to the sale proceeds

("Blakely Sale").  The net proceeds of $348,490.02 were placed in a blocked account and became the subject of another adversary proceeding, which is not a part of this appeal.[4]  Pursuant to a stipulated judgment, the Blakely Sale proceeds, less $20,000 to settle with the Internal Revenue Service, were Partnership property.  According to the Trustee, but for Mr. Curtin's obligation to reimburse the Trustee for his share of the Loma Alta Attorney Expenses, he would be entitled to a 37% pro rata distribution of the Blakely Sale proceeds under the Interim Distribution Agreement, or the sum of $130,083.34, assuming the adversary proceeding over the Blakely Sale proceeds is otherwise favorably resolved.

The Trustee and Mr. Curtin wanted to resolve the issue over the distribution of $229,405.31, which the Trustee had held back from the interim distributions as of October 31, 2008, and the payment of Mr. Curtin's share of the Loma Alta Attorney Expenses.  They entered into an agreement, which was approved by the Bankruptcy Court on June 25, 2009 ("Expense Allocation Agreement").  In August 2009 a dispute arose as to the interpretation of the Expense Allocation Agreement.

The Trustee thought the Estate was entitled to $268,378.98, representing Mr. Curtin's share of the Loma Alta Attorney Expenses, based on a 37% share of the Property, and that the Expense Allocation Agreement provided an accommodation to Mr. Curtin in that a part of it would be repaid by assignment of his share of the Blakely Sale proceeds, which were still tied up in the adversary proceeding, rather than by an offset against a cash distribution.  Specifically, pursuant to Paragraph B.3.c of the Expenses Allocation Agreement, the Trustee would and did pay Mr. Curtin $221,195.01, comprised of $130,083.34 (for assignment of the Blakely Sale proceeds) and an additional sum of $91,110.67 (interim distribution to Mr. Curtin).  (Pyle Decl. Ex. C.)  After Mr. Curtin's assignment of the Blakely Sale proceeds, according to the Trustee, the balance of Mr. Curtin's share of the Loma Alta Attorney Expenses was $138,294.64.  The problem was with the mechanism for Mr. Curtin's payment of this balance.  Paragraph B.3.b. provides the $138,294.64 balance would be "set off against Curtin's pro rata share of the Current

---

[4]         Adversary Proceeding No. 09-90026-PB.

1  Interim Distribution in the sum of $229,405.31 . . . ."  (Pyle Decl. Ex. C.)  However, because the

2  Trustee paid Mr. Curtin $221,195.01 out of the $229,405.31 amount, only $8,210.30 remained

3  available, which was insufficient to set off the entire $138,294.64 amount.  According to the

4  Trustee, Mr. Curtin still owed $130,084.34.  The only source for payment of this difference

5  would be an offset against future interim distributions.

6  Mr. Curtin thought the Expense Allocation Agreement allowed him to compromise his

7  share of the Loma Alta Attorney Expenses so as to secure a $130,084.34 discount.  He based this

8  interpretation on paragraph B.4., which provided that "[a]s subsequent interim distributions

9  (accruing subsequent to October 31, 2008) to Curtin become available, the Trustee shall be

10  permitted to continue to set off the Curtin Expense Share of the Loma Alta Attorney Expenses

11  incurred subsequent to October 31, 2008 after they are approved by the Court."  (Pyle Decl. Ex.

12  C.)  Because the agreement did not provide a mechanism for the Trustee to set off the

13  $130,084.34 balance still owing from Mr. Curtin for the Loma Alta Attorney Expenses incurred

14  before October 31, 2008, Mr. Curtin interpreted it as meaning that he no longer owed this

15  amount.

16  The Trustee and Mr. Curtin agreed that each interpretation of the Expense Allocation

17  Agreement was reasonable, that this was a mutual mistake of material fact, and that the Expense

18  Allocation Agreement should be rescinded.  They entered into the Agreement (Pyle Decl. Ex. E),

19  which is the subject of this appeal.

20  The purpose of the Agreement was to resolve the mutual mistake relative to the Expense

21  Allocation Agreement and settle the Trustee's claim against Mr. Curtin for $268,378.98 in Loma

22  Alta Attorney Expenses owing for the time period through October 31, 2008.  It also allowed the

23  Trustee to recover the entirety of Mr. Curtin's share of the Loma Alta Attorney Expenses owing

24  from November 1, 2008 forward.  (*See* Pyle Decl. Ex. E.)

25  Pursuant to the Agreement, the Expense Allocation Agreement would be rescinded and

26  the amount owing from Mr. Curtin for Loma Alta Attorney Expenses incurred through October

27  31, 2008 would be reduced from $268,378.98 to $203,336.81.  Mr. Curtin would pay it by (1)

28  assigning to the Trustee his share of the Blakely Sale proceeds in the amount of $130,083.34; (2)

agreeing that the Trustee would retain the $ 8,210.30 balance remaining of the $229,405.31 sum, which he had previously held back; and (3) agreeing that the Trustee set off the balance against the interim distribution to which Mr. Curtin was entitled for the period through July 31, 2009 under the Interim Distribution Agreement.  Whereas before, the Expense Allocation Agreement did not provide the Trustee with a mechanism to set off any of the $130,084.34 balance of Mr. Curtin's share of the Loma Alta Attorney Expenses, the Agreement reduced Mr. Curtin's balance in half, but provided a mechanism for the Trustee to set off the entire reduced balance.

The Agreement was subject to a reservation of rights as follows:

> Other than as specifically agreed herein, this Agreement shall not serve as a release or resolution of any claims between the Trustee, on one hand, and Curtin, on the other hand, including, without limitation, the extent or the percentage of Curtin's interest in the Partnership or the Property; the value of Curtin's interest in the Partnership or the Property, Curtin's entitlement to interest at a rate greater than that which the Trustee earned on Partnership funds in the accounts where those funds have been maintained; Curtin's right to seek reimbursement, disgorgement, or setoff of any sums heretofore or hereafter paid as the Curtin Expense Share to the extent Curtin's interest in the Property is hereafter adjudicated or otherwise found to be less than 37.328%; or the right of the Trustee to seek reimbursement, disgorgement or setoff of any sums heretofore or hereafter paid to Curtin.

(Pyle Decl. Exh. E, ¶ B.10.)

The only issue that was finally resolved with the Agreement was the amount of the Loma Alta Attorney Expenses which could be used a basis to charge Mr. Curtin, although the percentage of Mr. Curtin's share remained disputed.  (Transcript at 6, 9.)  The reason the Agreement was needed was to avoid litigation over how the Loma Alta Attorney Expenses were derived and to provide the Estate with a mechanism to recover the agreed portion of Mr. Curtin's share due to a mistake in the Expense Allocation Agreement. (*Id*. at 9, 13-15.)  The fact that the parties agreed to certain distributions to Mr. Curtin was not a final resolution of anything, because either party could later be ordered to reimburse the other, depending on the final adjudication of the adversary proceedings, including the actual extent of Mr. Curtin's share of the Property or the Partnership.  It appears therefore that the Agreement and the Bankruptcy Court order approving it were interlocutory rather than final in nature.

The Debtor does not dispute this.  To the contrary, he relies on the interlocutory nature of the Agreement as a reason to prevail on the merits of his appeal.  He argues that the Agreement

10cv455

should not have been approved because it was a "non-final determination of the Curtin interest." (Appellant's Opening Brief at 3.)  Consistently, he acknowledged at the hearing below that the Agreement was "not the final resolution but merely an interim settlement."  (Transcript at 13.)

Based on the foregoing, the underlying order was interlocutory rather than final.  The Debtor has not obtained leave to appeal.  The appeal is therefore **DISMISSED** for lack of appellate jurisdiction.

**IT IS SO ORDERED.**

DATED:  March 3, 2011

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. ANTHONY J. BATTAGLIA
UNITED STATES MAGISTRATE JUDGE

ALL COUNSEL/PARTIES

10cv455